### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

IN RE:       KEVIN A. MURRAY        :        Chapter 13
                                    :
                                    :
              Debtor(s)            :        Bky. No. 06-13821ELF

# M E M O R A N D U M

### I.

Presently before me in this chapter 13 case is the application for allowance of

compensation and reimbursement of expenses ("the Application"), filed by the Debtor's counsel

("the Applicant"). The Applicant seeks allowance of compensation of $4,950.00 and

reimbursement of expenses of $341.00 (consisting of the filing fee of $274.00 and other expenses

of $67.00).

The Application has certain problems that arise with some frequency in the large number

of chapter 13 fee applications that are filed with the court. For the reasons set forth below, I will

grant the Application in part and deny it in part, allowing compensation of $2,726.00 and

reimbursement of expenses of $274.00.

### II.

Much ink has been spilled on the subject of attorney's fees in bankruptcy cases, including

chapter 13 cases. See generally 3 Keith M. Lundin, Chapter 13 Bankruptcy §294.1 (3d ed. 2000

& Supp. 2004) ("K.M. Lundin") (discussing a variety of issues relating to the allowance of

counsel fees in chapter 13 cases and citing numerous reported decisions). To rule on the pending

1

Application, it is not necessary to canvass the entire subject area.  However, it is helpful to identify several foundational principles bankruptcy courts have employed in ruling on applications for the allowance of professional compensation in chapter 13 cases.

Fees are allowed in chapter 13 cases pursuant to 11 U.S.C. §330(a) and "fall squarely within the category of administrative expenses described in §503(b)(2)."  3 K.M. Lundin §294.1, at 294-1.  As such, payment of allowed counsel fees is mandatory in a chapter 13 plan.  See 11 U.S.C. §1322(a)(2).

The statutory standards for allowance of counsel fees are set forth in 11 U.S.C. §330(a)(4)(B), which authorizes the court to allow reasonable compensation to the debtor's attorney in a chapter 13 case "based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."  The "other factors" referred to include:

> (1)    the time expended;
>
> (2)    the rates charged;
>
> (3)    whether the services were necessary;
>
> (4)    whether the services were performed in reasonable amount of time considering the nature of the issue or task involved;
>
> (5)    whether the professional is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (6)    whether the compensation is reasonable considering the customary compensation charged by comparably skilled practitioners.

See id. §330(a)(3)(A)-(F).

The procedure for allowance of compensation is set forth in Fed. R. Bankr. P. 2016(a).

2

Under Rule 2016(a), an entity seeking the allowance of compensation must "file an application."

If the amount requested exceeds $1,000.00, at least twenty (20) days notice must be provided for

any hearing on the application.  Fed. R. Bankr. P. 2002(a)(6).  The application must set forth,

inter alia, a detailed statement of  "(1) the services rendered, time expended and expenses

incurred, and (2) the amounts requested."  Fed. R. Bankr. P. 2016(a); see In re Smith, 331 B.R.

622, 633 (Bankr. M.D. Pa. 2005) (citing In re Fry, 271 B.R. 596, 602 (Bankr. C.D. Ill. 2001)).

In this district, like many bankruptcy districts, the local rules authorize a summary

procedure for certain fee applications in chapter 13 cases.  See L.B.R. 2016-2.  Specifically, if

counsel's total request for compensation (i.e., the sum of the prepetition retainer and the amount

requested to be disbursed by the chapter 13 trustee) is $2,000.00 or less, the local rules authorize

counsel to file a "short form" fee application, which requires only a description of the services

rendered, the expenses incurred and a statement of the total amount of time expended.  Id.  This

summary process is commonly referred to as the "no-look" procedure.  See In re Smith, 331 B.R.

at 629-30 (discussing policy benefits and dilemmas created by use of "no-look" methodology in

allowing compensation, including the need to establish appropriate fee levels for normal and

customary services and a procedure for allowing compensation in cases involving reasonable and

necessary services that are non-routine);  see also In re Eliapo, 468 F.3d 592, 599 (9th Cir. 2006)

(finding "nothing in §330 that prevents a bankruptcy court from issuing and then relying on

guidelines establishing presumptive fees for routine services in Chapter 13 cases"); 3 K.M.

Lundin §294.1, at 294-27 n.69 (referring to the practice of awarding fees summarily if the

amount requested is below a certain level as having "come out of the closet").[1]

In this case, the Application exceeds the "no-look" amount set forth in L.B.R. 2016-2.[2] Therefore, it must be analyzed under L.B.R. 2016-3.  L.B.R. 2016-3 reiterates the requirements set forth in Fed. R. Bankr. P. 2016(a) by requiring applications to include a description of services performed that identifies each service separately in sufficient detail to allow evaluation of the benefit derived from the service, the date each service was performed and the time expended.

The moving party bears the burden of proof in establishing an entitlement to compensation.  In re Rothman, 206 B.R. 99, 110 (Bankr. E.D. Pa. 1997).  Thus, requests for compensation may be disallowed or reduced if the moving party fails to identify each service separately and in sufficient detail in the application to provide the court with enough information to make an informed review of the request. See, e.g.,  In re Green Valley Beer, 281 B.R. 253, 259 (Bankr. W.D. Pa. 2002) ("Courts have refused repeatedly to approve unitemized disbursements for services that are lumped together in a single entry, because such action inhibits the court from estimating the reasonableness of the individual services and their value to the debtor's estate"); In re Jefsaba, Inc., 172 B.R. 786, 801 (Bankr. E.D. Pa. 1994) ("only time entries separately listed

---

[1]  On its face, LBR 2016-2 merely dispenses with the chapter 13 debtor's counsel obligation to submit time records with a fee application.  In practice, LBR 2016-2 may create a presumptively reasonable counsel fee amount for those chapter 13 cases that achieve the entry of a confirmation order.

[2]  L.B.R. 2016-2 has not been modified since the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA")  Presently, a local rulemaking process is underway that may result in an increase in the amount of the "no-look" fee authorized by L.B.R. 2016-2.  See generally Fed. R. Bankr. P. 9029(a)(1) (setting forth procedures for adoption of local bankruptcy rules).

and explained in detail are compensable").

Turning to the role of the court in reviewing requests for allowance of compensation (as opposed to the obligations of the entities requesting such compensation), the Court of Appeals has held unequivocally that the bankruptcy court "has a **duty** to review fee applications, notwithstanding the absence of objections by the United States trustee . . ., creditors, or any other interested party, a duty which . . . derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest." In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 841 (3d Cir. 1994) (emphasis in original).[3]  Although Busy Beaver was a chapter 11 case, there appears to be a consensus that the bankruptcy court's duty to review fee applications, even in the absence of objection, applies equally in chapter 13 cases.  See e.g., In re Waltenberg, 2007 WL 1740274 (Bankr. E.D. Pa. June 15, 2007); Smith, 331 B.R. at 627.[4]

---

[3]  The court's authority (as opposed to its duty) to award less than the amount requested even when no objection is filed is indisputable and is grounded in the statute.  See 11 U.S.C. §329(b).

[4]  The rationale for the existence of the court's duty in chapter 11 cases seems equally applicable in chapter 13 cases:

> A court's "overriding obligation" when examining a professional's fee application is to " 'protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors.' " Busy Beaver, 19 F.3d at 844. . . .  In awarding fees, a bankruptcy court is interested in not only adequately compensating attorneys in order to encourage competent counsel to choose bankruptcy as an area to practice, "but in insuring that the costs of administration do not consume all of the assets that would have been available to creditors." In re Columbia Plastics, Inc., 251 B.R. 580 (Bankr. W.D. Wash. 2000). In making a fee determination, the court must take into consideration whether the professional exercised "reasonable billing judgment." In re Grosswiler Dairy, Inc., 257 B.R. 523, 528 (Bankr. D. Mont. 2000); In re Mednet, 251 B.R. 103 (9th Cir. BAP 2000). "The court's responsibility to protect the estate is especially important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance." In re

The court's obligation to engage in an independent review of requests for compensation from the estate is tempered somewhat by the principle that bankruptcy courts should not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation [to the point] . . . that the inquiry into the adequacy of the fee assume[s] massive proportions, perhaps even dwarfing the case in chief." Busy Beaver, 19 F.3d at 845 (quoting Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976) (en banc)). Put slightly differently, "[b]ecause its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." Busy Beaver, 19 F.3d at 845.

Finally, the Court of Appeals has instructed that if the bankruptcy court intends to disallow a request for compensation, in whole or part, the court must provide the applicant with basic procedural due process protections – notice of the reasons for the disallowance and a reasonable opportunity to clarify any ambiguities in the application or to present evidence or argument in support of the application. Busy Beaver, 19 F.3d at 845-47. This requirement may be satisfied in a number of ways. Id. In this district, after an initial review of an application for compensation, frequently, the court will schedule a hearing to resolve concerns about the application before issuing its ruling. That hearing may resolve the issues or lead to the filing of an amended application or a supplement to the application. Alternatively, without a prior hearing, the court may: (a) make its decision, allowing compensation in an amount less than that

---

Szymczak, 246 B.R. 774, 778 (Bankr. D.N.J. 2000).

Smith, 331 B.R. at 628.

6

requested; (b) identify its concerns in a written decision on the application; and (c) reconsider the

decision after presentation of further argument or evidence upon motion of the applicant. The

local rules require that, on request of the applicant for reconsideration of an order reducing the

compensation requested, the court hold a hearing. <u>See</u> L.B.R. 2016-1(f).[5]  In this case, I have

employed the alternate approach.[6]

**III.**

On September 19, 2006, two (2) weeks after the commencement of this case, the

Applicant filed his Disclosure of Compensation Pursuant to Fed. R. Bankr. P. 2016(b) ("the

2016(b) Statement").  The 2016(b) Statement states that the Debtor paid or agreed to pay

$2,726.00 in compensation for services rendered or to be rendered in the bankruptcy case, of

which $726.00 was paid prior to the filing of the 2016(b) Statement, leaving a "Balance Due" of

$2,000.00.  Later in the 2016(b) Statement, the Applicant disclosed that, in addition to the

---

[5]  L.B.R. 2016(f) provides:

> *Disposition Without Hearing: Reduced Award.* If the court without holding a
> hearing, awards an applicant less than the requested amount of compensation and
> reimbursement of expenses, an applicant's motion under Rule 9023 of the
> F.R.B.P. to alter or amend the order may include a request for a hearing on the
> application or be accompanied by a brief in support of the application. Such a
> motion to alter or amend is governed by LBR 9014-2, Motions Determined
> Without a Hearing, except that the court shall hold a hearing if an applicant
> requests a hearing.

[6]  Therefore, if the Applicant moves for reconsideration under Fed. R. Bankr. P. 9023
and requests a hearing under L.B.R. 2016(f), I will schedule a hearing.

$726.00, he received an additional $274.00 from the Debtor for payment of the filing fee.[7]  The

Applicant signed and dated the 2016(b) Statement and certified "that the foregoing is a complete

statement of any agreement or arrangement for payment to me for representation of the debtor(s)

in the bankruptcy proceeding."  (Docket Entry No. 16).

The plain language of the 2016(b) Statement suggests that the Applicant and the Debtor

agreed upon a flat fee of $2,726.00 for the Applicant's representation of the Debtor in this

bankruptcy case.  Paragraph 5 states:

> In return for the above-disclosed fee, I have agreed to render legal service **for all
> aspects of the bankruptcy case**, including:
>
> > a.  Analysis of the debtor's financial situation, and rendering advice to the
> > debtor in determining whether to file a petition in bankruptcy;

---

[7]  This disclosure was made in an awkward fashion.  Paragraph 6 of the 2016(b)
Statement states: "By agreement with the debtor(s), the above-disclosed fee does not include the
following **services**: Filing Fee of $274.00."  (emphasis added).  The reference to "the following
services" is ill-suited for this disclosure about monies received but not considered part of the
attorney's compensation.  That said, I understand this disclosure to mean that while the Applicant
received a total of $1,000.00 from the Debtor, $274.00 of that sum was intended to be used for
the filing fee.  This reading of the disclosure is consistent with the information provided in ¶9 of
the Debtor's Statement of Financial Affairs (Docket Entry No. 12) and ¶3 of the Application.

The 2016(b) Statement does not reveal whether the Applicant placed the money
intended for payment of the filing fee in his trust account or commingled the funds in his
operating account.  See generally Pa. Rules of Prof. Conduct 1.15(a) ("A lawyer shall hold
property of clients or third persons that is in a lawyer's possession in connection with a
client-lawyer relationship separate from the lawyer's own property"); In re Disciplinary
Proceedings Against Engelbrecht,  298 Wis.2d 323, 326, 725 N.W.2d 630, 631 (Wis. 2007)
(attorney disciplined for, inter alia,  failing to deposit and hold in his trust account monies
intended for a bankruptcy filing fee);  State ex rel. Oklahoma Bar Ass'n v. Scroggs, 2003 OK 21,
70 P.3d 821, 825 (Okla. 2003) (commingling filing fees with attorney's own funds violates Rule
1.15(a) of Oklahoma's Rules of Professional Conduct). Nor does it reveal whether the Applicant
has already reimbursed himself for any advance he may have made for payment of the filing fee.

8

b.   Preparation and filing of any petition, schedules, statement of affairs
and plan which may be required;

c.   Representation of the debtor at the meeting of creditors and
confirmation hearing, and any adjourned hearings thereof . . . .

2016(b) Statement (Docket Entry No. 16) (emphasis added).

On November 16, 2007, consistent with the 2016(b) Statement, the Applicant filed a

proof of claim requesting the allowance of compensation of $2,000.00.[8]

The Confirmed Plan, however, filed on May 4, 2007, is not consistent with the

---

[8]  Filing a proof of claim for counsel fees payable to the debtor's counsel in a chapter 13
case is of questionable legal significance.  In his proof of claim for professional compensation,
the Applicant in this case sought to be treated as the holder of an administrative priority claim
under §507(a)(2). Section 507(a)(2) grants priority to administrative "expenses" allowed under
11 U.S.C. §503(b)  – which, as stated earlier, includes compensation and reimbursement of
expenses awarded under §330(a).  Section 503(a) permits a party to "request" payment of a
§503(b) administrative expense (not file a claim therefor) and requires notice and hearing before
such expenses are allowed.  Cf. 11 U.S.C. §502(a) (if a proof of claim is filed, the claim is
allowed absent objection by a party in interest).  In other words, administrative expenses
(including compensation awarded under §330(a)) are not prepetition claims and are allowed by a
different procedure than prepetition claims.  See, e.g., 4 Collier on Bankruptcy ¶503.02[1], at
503-10 (15th rev. ed. 2007) (a request for payment of an administrative expense "is not properly
asserted in a proof of claim"); Official Form 10 (stating "[t]his form should not be used to make
a claim for an administrative expense").

I am aware that one of the standing chapter 13 trustees in this district expects the
debtors' counsel to file a proof of claim as well as an application for compensation to obtain a
distribution from the trustee after confirmation.  If the court allows compensation in an amount
that differs from a prior filed proof of claim, I presume that the trustee or the debtors' counsel
reconciles the Claims Register with the court's order.  Therefore, I infer that one purpose of the
proof of claim is to enable the trustee to determine the proper distribution by reference to one
document: the Claims Register.  Perhaps another purpose served is that it puts the trustee on
notice, in the period after confirmation but before the allowance of the compensation, of the
amount that the trustee may need to hold  in reserve for payment of administrative expenses
(before distributing the plan payments to claimants with a lower priority in distribution).
Whatever administrative convenience may be achieved through this custom, strictly speaking, the
filing of a proof of claim for §330(a) compensation does not result in its allowance.  Such
compensation may be allowed only after notice and hearing.  See 11 U.S.C. §330(a).

9

Applicant's prior filings.  Paragraph 4.a. of the Confirmed Plan appears to provide for the payment of $3,000.00 in compensation to the Applicant.

Finally, in the Application, filed on June 20, 2007, the Applicant requests compensation of $4,950.00 based on 19.8 hours of time expended in the representation and at a requested hourly rate of $250.00.[9]

The Application also requests reimbursement of expenses, stating that the Applicant "incurred" the filing fee of $274.00, parking expenses of $32.00 and duplicating expenses of $67.00.  Other than representing that the duplicating expenses were based on a rate of 20 cents per page, the Application sets forth no further details describing how or why the $67.00 in duplicating expenses was incurred.

The Applicant has certified that he served the Application on the Debtor, all creditors, the chapter 13 Trustee and the U.S. Trustee.  No objections to the Application have been filed.

## IV.

There are three (3) distinct flaws in the Application.

## A.

First, the compensation requested in the Application is not consistent with the Applicant's 2016(b) Statement.

The significance of the conflict between the Application and the 2016(b) Statement should not be minimized.  While 11 U.S.C. §330(a) authorizes the bankruptcy court to allow

---

[9]  The Application includes time records for the 19.8 hours referenced.

reasonable compensation to the debtor's counsel as an administrative expense, the implicit

foundation for the exercise of that authority is the existence of a contractual basis under state law

for the debtor's payment obligation to his or her counsel.  In other words, counsel's right to

payment is grounded in his or her retention agreement with the debtor while also regulated by the

operation of 11 U.S.C. §330 and related provisions of the Bankruptcy Code and rules of court.

Thus, if the debtor's counsel and the debtor enter into a flat fee agreement for the provision of all

of the services the debtor requires in the chapter 13 case, the bankruptcy court may award the flat

fee (if it is reasonable), but may not augment the award if the representation entailed more

services by counsel than anticipated.  See In re Conder, 1994 WL 16005425 (Bankr. S.D. Ga.

March 30, 1994) (prior to receipt of additional evidence provided on motion for reconsideration,

court limited fee allowance in chapter 12 case to apparent flat fee described in disclosure of

compensation made pursuant to Fed. R. Bankr. P. 2016(b)).

In this case, I read the Applicant's 2016(b) Statement ("[i]n return for the above-disclosed

fee [i.e., $2,726.00], I have agreed to render legal service **for all aspects of the bankruptcy case**

. . . .") to disclose a flat fee arrangement.   Because there is an apparent flat fee agreement

between the Debtor and the Applicant, the allowed compensation should be governed by that

limitation, provided that the flat fee is itself reasonable.  See Conder, 1994 WL 16005425.[10]

---

[10]   Based on my experience, I have some doubt whether the fee arrangement in this case
was, in fact, a flat fee, because that type of fee arrangement is rare (although not unheard of) in
chapter 13 cases.  The only evidence in the record, however, on the subject is the 2016(b)
Statement filed and signed by the Applicant. The 2016(b) Statement plays an important role in
the system of court oversight of professional compensation in the bankruptcy system. See, e.g.,
In re Berg, 356 B.R. 378, 380-82 (Bankr. E.D. Pa. 2006) (discussing role of the disclosure
mandated by Fed. R. Bankr. P. 2016(b) in chapter 13 cases). Unless and until the Applicant
amends his Rule 2016(b) disclosure to correct what may have been an erroneous disclosure or
otherwise credibly contradicts or supplements it, I will give credence to the existing disclosure.

11

**B.**

The compensation requested in this case ($4,950.00) exceeds, by a significant amount, the compensation commonly allowed to debtors' counsel in chapter 13 cases.[11]  Even if reduced to the putative flat fee level derived from the 2016(b) Statement of $2,726.00, the requested compensation exceeds the "no-look" threshold set fort in L.B.R. 2016-2.  Therefore, to assess the reasonableness of the requested compensation, I must consider the need for and quality of the services rendered.  In doing so, it is helpful to review the history of this chapter 13 case.

As explained below, my review of the history of this case suggests that while the Applicant has achieved his client's primary goal (i.e., confirmation of a chapter 13 financial rehabilitation plan): (1) it is not transparent from the docket entries and the documents filed in the case what issues or complications caused the legal fees to substantially exceed the norm and; (2) the Applicant's work product lacked a degree of precision.  Both of these conclusions reinforce the necessity for the Applicant's compliance with the requirement in the national bankruptcy rules and the local rules that the Application provide sufficient detail regarding the services provided and time expended to permit a critical assessment of the Applicant's fee request.  And, as discussed in Part IV.B.2. below,  the Application does not provide the additional information that would justify the level of compensation requested.

---

[11]    In my experience, the vast majority of the post-BAPCPA chapter 13 fee applications request the allowance of compensation between $2,500.00 to $3,500.00.  The instant Application exceeds the upper end of the range by more than 40%.

**1.**

Debtor Kevin A. Murray filed a chapter 13 bankruptcy petition in this court on September 5, 2006.  The initial filing was accompanied only by the Debtor's Statement of Social Security Number, Certificate of Credit Counseling and the mailing matrix.[12]  On September 19 and 20, 2006, the Debtor filed the remaining required documents, including his bankruptcy schedules, statement of financial affairs, statement of current monthly income[13] and chapter 13 plan.

The Debtor's Second Amended Plan was confirmed by an Order of this court dated June 5, 2007.  The confirmed Second Amended Plan (hereinafter "the Confirmed Plan") provides for the Debtor to pay the Trustee a total of $111,000 over a 60 month period.  It creates three (3) classes of creditors.

**Class 1 Claims**

Paragraph 4.a. of the Confirmed Plan defines Class 1 as all allowed claims entitled to priority under 11 U.S.C. §507. The Confirmed Plan identifies the Commonwealth of Pennsylvania, the Bucks County Tax Claim Bureau and the Applicant as the only Class 1 claimants.  Paragraph 4.a. refers to the Applicant as the holder of  "an administrative claim" of

---

[12]    I may take judicial notice of the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute.  See Fed. R. Evid. 201;  In re Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa. Aug. 26, 1998);  See also In re Indian Palm Associates, Ltd., 61 F.3d 197, 205 (3d Cir. 1995).

[13]    The statement of current monthly income disclosed the Debtor to be a "below median" debtor.  See generally 11 U.S.C. §1325(b)(3) (requiring that the calculation of "disposable income" be based on the "means test" standards set forth in 11 U.S.C. §707(b)(2) only if the debtor's current monthly income is above the highest median family in the applicable State for a family of the same size as the debtor's household).

$3,000.00 "in attorney's fees and costs." The Confirmed Plan provides for full payment of Class

1 claims. The Commonwealth of Pennsylvania has filed a priority claim in the amount of

$22,322.41. The Applicant filed an administrative claim under 11 U.S.C. §507(a)(2) in the

amount of $2,000.00.[14] However, the Bucks County Tax Claim Bureau filed a secured claim, not

a priority claim, in the amount of $9,359.66.


**Class 2 Claims**

Class 2 consists of "[a]ll secured claims, including the claim of Mortgage Electronic

[Registration] Systems ("MERS")."[15] Confirmed Plan ¶4.b. Notwithstanding the definition of

Class 2 Claims as including "all" secured claims, ¶5.b. of the Confirmed Plan provides for the

trustee to make a class 2 distribution only to an unidentified Class 2 "claimant" [N.B., the use of

the singular], in payment of "the entire amount of the arrearages set forth in its claim."

The tension between the Confirmed Plan's definition and treatment of Class 2 claims was

not resolved by the claims process. Several secured claims were filed –  by EMC Mortgage (not

MERS) for mortgage arrearages of $51,943.70, Beneficial Savings Bank for $2,595.86 (secured

---

[14]       The disparity between the $2,000.00 proof of claim previously filed and the
$3,000.00 distribution authorized by the Confirmed Plan most likely arose because the proof of
claim was filed early in the case before the Applicant concluded that he had earned fees in excess
of that amount. I presume that the Applicant simply neglected to amend the proof of claim,
which, as observed in the text above, was filed in an amount consistent with the Applicant's
2016(b) Disclosure of Compensation. See Part III, supra (text accompanying n.8, supra).

[15]       MERS has been described as an entity that "administers an electronic registry to
track the transfer of ownership interests and servicing rights in mortgage loans, serving as
mortgagee of record and holding legal title to mortgages in a nominee capacity." In re Huggins,
357 B.R. 180, 183 (Bankr. D. Mass. 2006).

by a 1998 Honda automobile)[16] and Primus Financial Services for $6,173.81 (secured by a 1999

Acura automobile).[17]   Therefore, it is not entirely clear how the chapter 13 Trustee should

distribute the plan payments received from the Debtor.   See 11 U.S.C. §1326(a)(2) (after

confirmation, the chapter 13 trustee shall distribute plan payments "in accordance with the

plan").[18]


**Class 3 Claims**

The Confirmed Plan designates all other claims as Class 3 claims.   Class 3 claimants are

to receive a pro rata distribution after Class 1 and Class 2 claimants have been paid.   The Claims

Register reflects that four (4) unsecured claims, totaling $9,472.35, have been filed.

---

[16]     Prior to confirmation, Beneficial Savings Bank filed a motion for relief from the automatic stay.  In a settlement stipulation, the Debtor agreed to pay the entire balance of the claim (set as $1,704.00) by June 8, 2007.  The Debtor did not amend his chapter 13 plan to account for this treatment of the claim prior to confirmation of the Confirmed Plan on June 5, 2007.  Nor has Beneficial's proof of claim been withdrawn.

[17]   By Order dated December 28, 2006, prior to confirmation, Primus Financial Services obtained relief from the automatic stay to proceed against the 1999 Acura automobile based on an uncontested motion that alleged that the Debtor had made no monthly instalment payments since September 2006.  Nothing in the record indicates whether, notwithstanding the entry of that Order, the Debtor reached an accommodation with Primus and retained the vehicle or whether the vehicle has been repossessed.  After the entry of the relief from stay Order, the Debtor did not amend his chapter 13 plan to alter the proposed treatment of Primus' secured claim.  Nor has the proof of claim been withdrawn.

[18]   This issue is not presently before me.  I am considering the apparent ambiguities in the Confirmed Plan only to the extent that they may be relevant in determining the compensation to be allowed to the Applicant.

15

**2.**

As stated above, since even the putative flat fee of $2,726.00 exceeds the present "no-look" fee in this bankruptcy district, I must consider the Applicant's statement of the services rendered and the time expended and evaluate the benefit derived from the services. E.g., Fed. R. Bankr. P. 2016(a); L.B.R.2016-3(a)(1).

In connection with this bankruptcy case, a review of the case dockets reveals that the Applicant provided a variety of services to the Debtor, culminating in the confirmation of the Debtor's Second Amended Chapter 13 plan by the Order dated June 5, 2007. These services included:

- preparation of the petition, schedules and related statements;

- representation at the §341 meeting of creditors;

- resolving a motion for relief from stay filed by a lender secured by the Debtor's automobile;

- resolving a motion to dismiss filed by the Trustee;

- preparing and filing an Amended and Second Amended Plan; and

- obtaining confirmation of the Debtor's Second Amended Chapter 13 Plan (which itself required resolving an objection to confirmation filed by a creditor).

The types of services rendered in this case are not uncommon in chapter 13 cases. Depending upon the specific facts involved and other dynamics in the case, it is certainly possible that the Debtor needed legal services which would merit allowance of a premium fee – perhaps even services resulting in a bill for $4,950.00 as requested by the Applicant (if he were not bound by his contrary 2016(b) Statement). However, the Application and the time records

submitted by the Applicant offer no insight into the particular circumstances in this case that

would warrant the enhanced fee requested.[19]

Many of the entries in the time records the Applicant submitted were unsatisfactory,

providing inadequate information to permit a critical evaluation of the services performed, the

benefits achieved and the reasonableness of the time expended.   Numerous time entries stated

nothing more than "Telephone conference with Client" or "Telephone conference with [one or

more third parties]."   Entries totaling as much as 8.8 hours suffer from this defect.   However,

taking into account that, even without any explanation in the time records, I could discern from

the timing or other contextual clues the purpose and need for certain conferences, I find that 7.5

hours of the 19.8 hours expended by the Applicant were not adequately explained.   If I were to

subtract all 7.5 hours, the Applicant is entitled to compensation for 12.3 hours at an hourly rate of

$250.00.[20]   The resulting lodestar is $3,075.00, an amount which exceeds the putative flat fee

---

[19]   I note that two of the observations made by (now Chief) Judge Sigmund in Jefsaba,
involving the court's review of fee applications in a commercial bankruptcy case are also
pertinent as well in the chapter 13 context: (1) presentation of the services provided in a
chronological manner does not necessarily facilitate an informed judgment regarding the
allowability of the fees requested and (2) a summary of time expended by project (i.e., "project
billing") better enables the court to critically analyze a fee application. 172 B.R. at 799.

Bankruptcy judges in this district review hundreds of chapter 13 fee applications each
year.  While the details of the time expended on particular tasks in the case are certainly useful
and necessary, a narrative by the applicant describing the tasks that rendered it necessary for the
debtor to incur legal fees in excess of the "no-look" amount provided in the local rules and the
amount of time expended on those tasks (in effect, a "project billing" analysis) may be more
valuable than a purely chronological time log.

[20]   Based on my experience, I am satisfied that the requested hourly rate is reasonable.
See generally Busy Beaver, 19 F.3d at 854 (judge's experience is the starting point in analyzing
reasonable rates based on market rates); In re Gordon-Brown,  340 B.R. 751, 759 (Bankr. E.D.
Pa. 2006).

identified in the 2016(b) Statement.

Despite the problems with the Application described above, I am satisfied that the compensation disclosed in the 2016(b) Statement (i.e., $2,726.00) is reasonable and allowable. Although, as stated earlier, the Applicant's work product was imperfect, leaving some ambiguities in the plan and case administration that may require further resolution by parties in interest, the chapter 13 trustee and/or the court, the Applicant was successful in accomplishing the primary objective in the case  – confirmation of a chapter 13 plan that provides for a cure of the Debtor's prepetition arrearages on his home mortgage  – and it is likely that any problems in case administration can be resolved without extended litigation.  Based on my perception of the market and the range of fees that are charged in this jurisdiction for chapter 13 cases with similar profiles, an allowed fee of $2,726.00 is well within the range of reasonableness.[21]

## C.

The Applicant seeks reimbursement of expenses for three (3) distinct expenses: (1) the $274.00 filing fee; (2) parking expenses of $32.00 and (3) duplicating expenses of $67.00.  There is no reason to question the Applicant's entitlement to reimbursement of the filing fee.[22]  The

---

[21]    Perhaps my conclusion is based on the economic reality that, even prior to any amendment of the "no-look" threshold in L.B.R. 2016-2, the cost of legal services in chapter 13 cases has increased.  See n.11, supra.  Even without an illuminating Application, based on my review of the case history, I am able to conclude that a $2,726.00 fee in this case is reasonable.

[22]    As discussed earlier, the 2016(b) Statement and the Debtor's Statement of Financial Affairs disclose that the Debtor paid the filing fee to the Applicant.  Thus, there should be no need for the Applicant to receive reimbursement from the plan payments the Debtor has paid to the Trustee.  The Order accompanying this Memorandum will state that while the reimbursement

parking and duplicating expenses require some additional discussion.

The standards courts employ in allowing the reimbursement expenses parallel the

standards for allowance of compensation:

> Just as time entries must be precisely recorded and described, so must entries relating to expenses. "Expenses" is a broad category which includes costs for photocopying, long distance telephone calls, facsimiles, postage, filing fees, travel, computer research and the like. In order to establish a right to reimbursement of expenses, the applicant's requests must be sufficiently detailed to enable the Court to perceive the actual and necessary nature of the expense.

In re Jefsaba, Inc., 172 B.R. at 802.

The Application does not explain the necessity for the expenses claimed with sufficient

specificity.  The activities requiring the expenditure of parking expenses and the dates involved

are not identified.  As for the duplicating expense, the Application states that the Applicant

charges 20 cents per page.  Thus, I can infer that the Applicant photocopied 335 pages of

material, but I do not know what was duplicated or the necessity for doing so.  While there are

certainly a variety of reasons why duplication of documents in chapter 13 cases could be

necessary and appropriate, even in the increasingly digital environment in which bankruptcy

attorneys practice,[23] the critical point is that the court should not have to speculate on the subject.

Some additional information regarding the purpose and quantity of photocopying of documents

must be included by the Applicant before a request for reimbursement of photocopying expenses

---

of this expense is allowed, the actual reimbursement will be from the money the Debtor paid to the Applicant prepetition.

[23]    Examples that come to mind include: copying payment advices for counsel's file; copying prepetition contracts between the debtor and creditors for counsel's file; copying title information regarding the debtor's house and car; copying documents on parties who are not "filing users" served electronically pursuant to the court's Standing Order No. M-03-3005 (April 1, 2003), as amended and who must be served in hard copy through the U.S. mail.

can be allowed.[24]

In short, I consider it likely that the Applicant incurred reimbursable expenses, other than

the filing fee.  However, I have inadequate information to quantify the allowable expenses.

Thus, except for the filing fee, the Applicant's request for reimbursement of expenses will be

denied.[25]


## VI.

For the reasons set forth above, the Application will be granted in part and denied in part.

An appropriate Order will be entered.


**Date:    August 6, 2007**                    _____

                                                **ERIC L. FRANK**
                                                **U.S. BANKRUPTCY JUDGE**

---

[24]      I recognize that the documentation requirement for photocopying, telephone and
postage expenses may feel burdensome to chapter 13 practitioners, given the relatively modest
level of compensation involved in chapter 13 cases.  However, the outcome is mandated by the
rules of court.  If the "no-look" amount in L.B.R. 2016-2 is adjusted upward, perhaps the
increased threshold will make it attractive for practitioners to roll their expenses into their
compensation and treat them as overhead.

[25]      As noted earlier, see n.7, supra, the Debtor gave the Applicant the $274.00 for the
filing fee.  I interpret the Applicant's request for approval of reimbursement of the filing fee
expense as indicating either that the Applicant has not yet reimbursed himself or, having done so,
he understands that such reimbursement requires court approval. Either way, the reimbursement
should not be derived from the plan payments the Debtor makes to the chapter 13 Trustee.  The
Order being entered will make that distinction clear.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE:        KEVIN A. MURRAY          :        Chapter 13
                                       :
                                       :
              Debtor(s)                :        Bky. No. 06-13821ELF

## O R D E R

     **AND NOW**, upon consideration of the Application for Compensation filed by the Debtor's

counsel ("the Applicant") and upon the Applicant's certification that proper service has been made on all

interested parties and upon the Applicant's certification of no response, and for the reasons set forth in

the accompanying Memorandum,

     It is hereby **ORDERED** that:

1.  The Application is **GRANTED IN PART AND DENIED IN PART.**

2.  The Applicant is allowed compensation in the amount of **$2,726.00**  .

3.  The Chapter 13 Trustee is authorized to distribute to the Applicant the allowed compensation less

    **$726.00**   which was paid by the Debtor prepetition as an administrative expense pursuant to 11

    U.S.C. §1326(b), 11 U.S.C. §507, 11 U.S.C. §503(b) and 11 U.S.C. §330(a)(4)(B).

4.  The Applicant is allowed reimbursement of expenses in the amount of **$274.00**, but such

    reimbursement shall not be paid by the Chapter 13 Trustee.  If the Applicant has not already taken

    such reimbursement from the amount paid by the Debtor to the Applicant prepetition (e.g., by

    transferring the filing fee amount from a trust account to an operating account), the Applicant is now

    authorized to do so.


Date:   August 6, 2007                    _____

                                          **ERIC L. FRANK**
                                          **U.S. BANKRUPTCY JUDGE**